<hr />

**HILL et al. v. EMPIRE STATE-IDAHO MINING & DEVELOPING CO.**

**MATHESON v. SAME.**

(Circuit Court, D. Idaho, N. D.    July, 1907.)

**1. CORPORATIONS—FOREIGN CORPORATIONS—VALIDITY OF SERVICE.**

While it is the general rule that a corporation can be sued and served with process in a state other than that of its incorporation only when it is doing business in such state, it is within the power of a state to provide by statute that before any foreign corporation shall transact business within its borders such corporation shall designate an agent in the state or consent that the incumbent of a certain office within the state shall be its agent upon whom process may be served in any suit in the courts of the state involving a controversy growing out of the business transacted by the corporation therein, whether such suit be brought before or after it has ceased to do business within the state; and a corporation having assented to such statutory provisions and designated an agent must respond to process served upon him in the mode prescribed by law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2507, 2515.

Service of process on foreign corporations, see notes to Eldred v. American Palace Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

**2. SAME—IDAHO STATUTE.**

Act Idaho March 10, 1903 (Laws 1903, p. 49), relating to foreign corporations, inter alia requires such a corporation before doing business in the state to designate some person in the county in which it has its principal place of business in the state upon whom process may be served, and to file such designation with the Secretary of State and the clerk of the district court for such county.    It further provides that such designation of an agent "shall run from the time of filing same as herein provided until his successor is appointed by such filing or said office becomes vacant by resignation filed by such agent in the office in which his appointment is filed or by his death or removal from such county, and in case of such vacancy said corporation shall within sixty days thereafter refile said office as herein provided."    Held that, where a foreign corporation had complied with the act and appointed an agent which appointment had neither been resigned nor revoked, valid service of process might be made on such agent in suits against the corporation growing out of its business in the state, even though it had ceased such business and sold

its property, and the agent was no longer connected with it aside from such agency.

On Motion to Set Aside and Quash Service of Summons.

A. G. Kerns, for plaintiffs.

John P. Gray, A. H. Conner, and Albert Allen, for defendant.

DIETRICH, District Judge. Each of these cases was commenced in the state district court for Shoshone county, and upon petition of the defendant was removed to this court, upon the ground of diversity of citizenship; the plaintiffs being residents and citizens of the state of Idaho and the defendant being a corporation organized under the laws of the state of New York. Upon the removal, the defendant, appearing specially, moves to set aside and quash the service of summons upon the ground that the defendant is a foreign corporation and that it did not, at the time of the commencement of this action or the attempted service of summons, own any property within the state of Idaho, and that it was not engaged in business in Idaho, and that it had no designated or other agent upon whom process could be lawfully served.

The complaint in each case alleges that the plaintiff was at the time of the commencement of the action, and for many years prior thereto had been, the owner and entitled to the possession of certain lands in Shoshone county, Idaho; that the defendant during the period from the year 1898 to the year 1903 operated certain mining claims and reduction works on the stream and the tributaries of the stream along which these lands are situated; that in the course of its operation of its mining claims and reduction works the defendant polluted this stream and its tributaries in such a manner and to such an extent as to injure plaintiff's lands and the trees and vegetation growing thereon; and that by such means and in such manner the plaintiff was damaged in a large sum, for which judgment is demanded. Summons was regularly issued, and the same, together with a copy of the complaint, was by the sheriff of Shoshone county served upon one W. H. North on the 12th day of January, 1907; it being recited in the sheriff's return that North was at the time of the service the designated agent of the defendant. The service was regular, if North was at that time, in contemplation of law, an "agent" of the defendant upon whom process could be served.

As disclosed by the record upon which the motion is made, the defendant, being engaged in mining business in Shoshone county, Idaho, and owning property there, at some date between the 10th day of March, 1903, and the 1st day of September, 1903, pursuant to and in compliance with the provisions of an act of the Legislature of the state of Idaho, approved March 10, 1903 (Laws 1903, p. 49), relating to foreign corporations, and specifying the conditions upon which foreign corporations could own property and transact business in the state of Idaho, appointed North, a resident of Wallace, in Shoshone county, Idaho, as its designated agent under said act of the Legislature upon whom process issued by authority of and under any law of the state of Idaho might be served. Inferentially it appears that at the time of such designation, and for some time prior thereto, and for

some time thereafter, North was in the employ of the defendant company in connection with its mining business. It also appears that on or about the 1st day of September, 1903, the defendant sold and disposed of all of the property owned by it in the state, and thereupon it closed its offices and ceased to transact any business in the state, and that it has not owned any property or transacted any business in the state since that time. While the affidavit of W. H. North filed in support of the motion states that on or about the 1st day of September, 1903, his employment by the defendant company ceased, and that since said date he has had nothing to do with the company as agent or otherwise, and has been in no manner in the employ of the company, and that he has never considered himself the agent of the company since he severed his connection with it, it is not claimed, as I understand, that any affirmative action was ever taken, either by Mr. North or the defendant, relative to the termination of the statutory agency involved in his designation or appointment as the person upon whom process against the defendant could be served. In other words, I do not understand that it is claimed upon behalf of the defendant that there ever was any express revocation of North's agency for the service of process, or that he ever formally or expressly resigned such agency; it being stated by counsel for the defendant at the time of the oral argument that it is immaterial whether or not any such action was taken. It is perhaps to be regretted that the record is not entirely clear and certain upon this point; but, in view of the construction given to the record at the time of the oral argument, I must assume, for the purposes of this decision, that the facts are that the defendant, on or about the 1st day of September, 1903, sold all of its property in Idaho, and ceased to transact any business in the state, and dismissed from its service all of its employés, but that no affirmative action was taken, either by it or by North, relative to the statutory agency. It is expressly stipulated that at the time of his appointment as such agent North was, and ever since has been, a resident of Shoshone county, and that no revocation of his appointment as such resident agent has ever been filed in any public office in the state, and no other designated agent in Idaho has ever been appointed by the defendant.

The act pursuant to the provisions of which North was appointed as the agent of the defendant provides that:

"Every corporation not created under the laws of this state must before doing business in this state, and every such corporation now doing business in this state must within three months after the taking effect of this act, file with the county recorder of the county in this state, in which is designated its principal place of business in this state, a copy of the articles of incorporation of said corporation, duly certified to by the Secretary of State of the state in which said corporation was organized, and a copy of such articles of incorporation duly certified by such county recorder, with the Secretary of State, paying to the latter the same fees as are provided by law to be paid for filing original articles of incorporation, and must within three months after the passage of this act or from the time of commencement to do business in this state, designate some person in the county in which the principal place of business of such corporation in the state is conducted upon whom process issue by authority of or under any law of this state, may be served, and within the time aforesaid must file such designation in the office of the Secretary

of State, and in the office of the clerk of the district court for such county, and a copy of such designation certified by either of said officers, must be evidence of such appointment; and it is lawful to serve on such persons so designated any process issued as aforesaid, and such service must be deemed a valid service thereof, such notice and designation of agent on whom process may be served, shall run from the time of filing same as herein provided, until his successor is appointed by such filing, or said office becomes vacant by resignation filed by such agent in the office in which his appointment is filed, or by his death, or removal from such county, and in case of such vacancy said corporation shall within sixty days thereafter refile said office as herein provided."

Thereupon it is provided that contracts and deeds made or taken by such corporation while in default shall be void, and other penalties are prescribed, and the act closes thus:

"Provided, further, that such foreign corporations complying with the provisions of this section shall have all the rights and privileges of like domestic corporations, including the right to exercise the right of eminent domain and shall be subject to the laws of the state applicable to like domestic corporations."

The position of the defendant is that, before a court can exercise jurisdiction over a corporation organized under the laws of a foreign state, it must appear that such corporation as a matter of fact is carrying on business in the district in which the federal court is sitting, and that such business is transacted by some agent or officer appointed by and representing the corporation in that district, or at least in that state. As a general proposition it may be conceded that the rule as thus stated is well supported by authority, if not familiar law, and, were it not for the above provisions of the Idaho statutes, the motion to quash would be granted without hesitation. But in practically all, if not all, of the controlling cases cited by counsel for the defendant, which announce and follow this rule, there was not involved the construction or effect of a statute making it a condition precedent to the right of a foreign corporation to do business in a state that it designate some one in the state upon whom process could be lawfully served.

It is unnecessary to enter upon an elaborate account of the growth and expansion of the law relating to the rights and obligations of corporations transacting business beyond the jurisdiction of the sovereignty where they were created. The recognition by comity of the right of a corporation to enter into contracts and to transact business in a state other than that of its origin, without at the same time holding it amenable to the process and subjecting it to the jurisdiction of the courts of such foreign state, naturally and inevitably led to unfairness and great hardship. Under modern industrial conditions corporations have multiplied with great rapidity; many of them having for their object the transaction of business upon a large scale and in a territory of wide extent. And it is obvious that if persons dealing with such corporations in a distant state cannot, in case of controversy, bring suit against such corporation in the district where the business is transacted, but must go to the state where such corporations are organized, not only intolerable inconvenience, but great injustice, will ensue. The courts, therefore, have adopted the view that when a foreign corporation sends into another state its officers and agents, and there opens

up offices and carries on business, such officers and agents represent it just as much in such foreign state as in the state of its creation. It being permitted to carry on business and to sue in the courts of a foreign state, it is only fair that it should respond to the process of the courts in such state when there are called into question the obligations and liabilities there incurred by it; and it is accordingly held that the jurisdiction of the courts of such state can be exercised over foreign corporations doing business therein whenever service can be made upon their officers or agents in the state in accordance with the laws thereof, and this is the general principle upon which counsel for the defendant relies.

But in actual experience it has been found that this principle is, in view of the wide prevalence of corporate business, susceptible of great abuse. In its application there are always two questions to be decided before the merits of a controversy can be reached, namely: Was the foreign corporation, who is made defendant, within the state where it is sued—that is, actually transacting business in such state—at the time of service of process? and, second, has the process been served upon a proper representative of the corporation in accordance with the provisions of the law of the particular jurisdiction? Corporations could come into a state, transact business, and incur obligations, and before process could be served upon them they could withdraw from the state, leaving unsatisfied their obligations; and a citizen in favor of whom, and in the state where, the obligation was incurred, would be compelled to seek the courts of the state where the corporation was organized, however inconvenient or inaccessible such courts might be. Moreover, under the general principle relied upon by defendant, it was often difficult to determine just what officer or agent, or person transacting business upon behalf of the foreign corporation, was a proper person upon whom to serve process. In comparatively recent years, therefore, many of the states have enacted statutes making provision for bringing into the courts of such states foreign corporations who are transacting or who have transacted business in such states, and compelling them there to litigate controversies growing out of such business transactions. These statutory provisions are diverse; some of them making detailed and comprehensive provision and imposing severe penalties, and others being of a less radical character. The tendency, however, has been and is to provide such laws as will make it possible to compel a foreign corporation, when sued, to litigate in the courts of the state where it transacts or has transacted business all controversies growing out of such business.

It is familiar law that a state may entirely exclude from its borders a corporation organized under the laws of another state, and it follows that, if it may entirely exclude, it may impose such conditions as it sees fit upon such corporation before permitting it to transact any business within its territory; and each state, therefore, has the right to prescribe any proper mode of service of process upon foreign corporations as a condition of their doing business, provided, always, that the mode so prescribed is not unreasonable or contrary to the principles of justice. Many of the states have accordingly provided that, before a corporation can do business within their territory, the corporations

seeking admission must designate some person upon whom process against it may be served. Sometimes the choice of such person is left to the corporation, and sometimes it is required to designate the incumbent of a certain permanent official position in the state. The right of the state to require a foreign corporation to designate and maintain an agent in the state upon whom process against it may be lawfully served while it is actually engaged in business in the state is, as I understand, conceded by defendant; but it is contended that this power of the state is limited to the period or time during which the corporation is actually transacting business in the state. In other words, whatever may be the legislation upon the subject, "in order that the court [using the express language of counsel] may acquire jurisdiction of a foreign corporation by service of process on an officer or agent of the corporation within the state where the court is held, it must appear, from some part of the record or by the return, that the corporation is doing business in such state." As I have already indicated, this may be conceded to be a correct statement of the law, in the absence of statutory provisions accepted or assented to by the foreign corporation. But in my view this principle is not to be regarded as a limitation upon the power of a state to enact legislation by which provision is made for the service of process upon a corporation after it has ceased to transact business in such a state, in suits involving controversies growing out of such business. Nor do I construe the authorities cited by counsel, especially those from the Supreme Court of the United States, as supporting the contention of the defendant in this respect.

If, as is conceded, a state may entirely exclude from its territory a corporation, or may impose upon it conditions precedent to its admission, upon principle what reason can be given for denying to the state the power to require a corporation, before transacting any business within the state, to designate an agent upon whom process may be served after such corporation withdraws from the state, as well as during the time it is actually transacting business in the state, in suits involving controversies arising out of the transaction of such business? If the contention of the defendant, as I understand it, be correct, a state has no power to protect its citizens against the great inconvenience, if not injustice, of a foreign corporation coming into a state, and transacting business, and incurring numerous obligations, and then, before the obligations mature, so that they can be enforced, ceasing to transact business, and thus compelling citizens of the state to resort to the courts of the jurisdiction where the corporation was created, however distant and inaccessible they may be. What fundamental principle of justice is violated by a statute which says to a foreign corporation, "You can come into this state, and transact and carry on your business, and here have the same rights and obligations as a domestic corporation, provided that, before you commence to transact such business, you will consent that, as to any matter or controversy growing out of your business operations in the state, the process of the courts of the state in a suit against you by a citizen of the state may be served upon a person to be designated by you, whether such process be served before or after you cease to do business?"

The policy of such a law would be for the legislative branch of the government to consider; but could the courts say that such a requirement, if enacted, would be unreasonable or contrary to the principles of natural justice, or in violation of any constitutional rights of the corporation?

In their reply brief, counsel for the defendant have cited the very recent case of Peterson v. Railroad Company, 205 U. S. 364, 27 Sup. Ct. 513, where the Supreme Court of the United States uses the following language:

"It is settled by the decisions of this court that foreign corporations can be served with process within the state only when doing business therein, and such service must be upon an agent who represents the corporation in its business."

But this general language must, I think, be construed as a statement only of the general rule repeatedly announced by that court and other courts. When it used this language the court was not considering the meaning or validity of a state law imposing conditions upon foreign corporations doing business in the state where the action was commenced; and hence this general language must be read in the light of the facts of that case.

The statutes of Ohio provided that service of process upon a resident agent of a foreign corporation authorized to contract for insurance should be as effectual as though the same were served upon the principal, the insurance company. In Lafayette Insurance Co. v. French et al., 18 How. 404, 15 L. Ed. 451, the insurance company was a corporation organized under the laws of the state of Indiana, and through one of its agents it entered into an insurance contract with French in the state of Ohio by which it insured his property situated in that state. The property having been consumed by fire, an action was brought upon the contract of insurance in a court in the state of Ohio, and process was served upon an agent of the insurance company in that state. In the course of its opinion the Supreme Court says:

"A corporation may sue in a foreign state by its attorney there, and, if it fails in the suit, be subject to a judgment for costs. And so if a corporation, though in Indiana, should appoint an attorney to appear in an action brought in Ohio, and the attorney should appear, the court would have jurisdiction to render a judgment in all respects as obligatory as if the defendant were within the state. The inquiry is, not whether the defendant was personally within the state, but whether he, or some one authorized to act for him in reference to the suit, had notice and appeared; or, if he did not appear, whether he was bound to appear or suffer a judgment by default."

And again the court says:

"We consider this foreign corporation, entering into contracts made and to be performed in Ohio, was under an obligation to attend, by its duly authorized attorney, on the courts of that state, in suits founded on such contracts, whereof notice should be given by due process of law, served on the agent of the corporation resident in Ohio, and qualified by the law of Ohio and the presumed assent of the corporation to receive and act on such notice; that this obligation is well founded in policy and morals, and not inconsistent with any principle of public law; and that, when so sued on such contracts in Ohio, the corporation was personally amenable to that jurisdiction; and we hold such a judgment, recovered after such notice, to be as valid as if the cor-

poration had had its habitat within the state—that is, entitled to the same faith and credit in Indiana as in Ohio, under the Constitution and laws of the United States."

In Railroad Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354, the court, speaking of a corporation, says:

"It cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the laws of the place. One of these conditions may be that it shall consent to be sued there. If it do business there, it will be presumed to have assented, and will be bound accordingly."

And again the court says:

"When this suit was commenced, if the theory maintained by the counsel for plaintiff in error be correct, however large or small the cause of action, and whether it were a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another state. In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be to a large extent immunity from all legal responsibility."

In St. Clair v. Cox, 106 U. S. 350, 27 L. Ed. 222, the court says:

"All there is in the legal residence of a corporation in the state of its creation consists in the fact that by its laws the corporators are associated together and allowed to exercise as a body certain functions, with a right of succession in its members. Its officers and agents constitute all that is visible of its existence; and they may be authorized to act for it, without as well as within the state. There would seem, therefore, to be no sound reason why, to the extent of their agency, they should not be equally deemed to represent it in the states for which they are respectively appointed, when it is called to legal responsibility for their transactions. The case is unlike that of suits against individuals. They can act by themselves, and upon them process can be directly served; but a corporation can only act and be reached through agents. Serving process on its agents in other states, for matters within the sphere of their agency, is, in effect, serving process on it, as much so as if such agents resided in the state where it was created."

And again the court says:

"The state may, therefore, impose as a condition upon which a foreign corporation shall be permitted to do business within her limits that it shall stipulate that in any litigation arising out of its transaction in the state it will accept as sufficient the service of process on its agents or persons specially designated; and the condition would be eminently fit and just."

This does not limit the power of the state to prescribe a mode of service confined to the time when the corporation is actually engaged in business or to the agents of the corporation; but it does confine the service to "litigation arising out of its transactions in the state," and to its agents, "or persons especially designated."

In Insurance Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, the court says:

"A vast mass of business is now done throughout the country by corporations which are chartered by states other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the state where the business was done out of which the dispute arises."

It is true that in some, if not all, of these decisions the general principle relied upon by counsel is stated in various forms; but the court was not considering a case where, "as a condition upon which a foreign corporation shall be permitted to do business," the corporation should stipulate "that in any litigation arising out of its transactions in the state" it would "accept as sufficient the service of process on" a person "specially designated." Perhaps in no other case decided by the Supreme Court is there a more satisfactory expression upon the point under consideration than is found in Mutual Reserve Fund Life Association v. Phelps et al., 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987.

In the state of Kentucky it was provided by statute that before any foreign insurance company could transact insurance business in that state it should file a written consent that service of process upon any agent of the company in the state, or upon the state insurance commissioner, in any action brought or pending in the state, should be a valid service upon the company. In Home Benefit Society v. Muehl, 59 S. W. 520, 109 Ky. 479, the plaintiff, Muehl, brought suit upon a policy, issued by the defendant while it was doing business in Kentucky; but the action was not commenced until after it had ceased to do business in that state and had withdrawn all of its agents therefrom. The sufficiency of the service upon the insurance commissioner and the jurisdiction of the court were attacked, as here, because the defendant was not at the time of the attempted service transacting business within the state. In commenting upon this contention the Court of Appeals of Kentucky used the following language:

"The words of the later statute express no limitation. Whatever limitation shall be applied to it must be by implication, and when we consider the purpose of the act it becomes clear that it would be frustrated by the construction contended for. There is no need of the right to serve process upon the insurance commissioner so long as the company has agents in the state, and we think the purpose of the section was to provide a means of obtaining service of process upon foreign companies which no longer had agents in the state upon whom process might be served in suits upon contracts made in this state, whatever may be held as to suits upon contracts entered into elsewhere."

In Germania Insurance Company v. Ashby, 65 S. W. 611, 112 Ky. 303, 99 Am. St. Rep. 295, the Court of Appeals of Kentucky had under consideration substantially the same question. The court says:

"It is conceded that, when appellant was admitted to do business in this state, it filed its written consent that service upon the insurance commissioner should be sufficient to notify it of all proceedings and actions that might be instituted. It stands admitted (by not being denied) that at the date of the service the appellant had withdrawn from the state."

And, after quoting the Kentucky statute upon the subject, the court, continuing, says:

"There is no provision in the law limiting this consent to such time as the insurance company shall do business in this state. The object and purpose of the statute (supra) was to provide a mode of service to citizens who should desire to sue upon contracts of the insurance company, rather than compel them to go to the state of the corporation for redress. If this consent is to be withdrawn as soon as the company withdraws, the provision, so far as the insurance company is concerned, would be a useless provision."

And the court reaffirms the rule laid down in the Muehl Case.

In the Phelps Case the Supreme Court, after quoting the Kentucky statute above referred to, and after referring to the Muehl Case and quoting therefrom the extract above set forth, and also referring to the Ashby Case, supra, uses the following language:

"Such decision of the highest court of Kentucky, construing one of its own statutes, if not controlling upon this court, is very persuasive, and it certainly is controlling, unless it be held to be merely an interpretation of a contract created by the statute. As an original question, and independently of any expression on the part of the Court of Appeals, we are of the opinion that such is the true construction. This and other kindred statutes enacted in various states indicate the purpose of the state that a foreign corporation engaging in business within its limits shall submit the controversies growing out of that business to its courts, and not compel a citizen having such controversy to seek the state in which the corporation has its home for the purpose of enforcing his claims. Many of those statutes simply provided that the foreign corporation should name some person or persons upon whom service of process could be made. The insufficiency of such provision is evident, for the death or removal of the agent from the state leaves the corporation without any person upon whom process can be served. In order to remedy this defect some states, Kentucky among the number, have passed statutes, like the one before us, providing that the corporation shall consent that service may be made upon a permanent official of the state, so that the death, removal, or change of officer will not put the corporation beyond the reach of the process of the courts. It would obviously thwart this purpose if this association, having made, as the testimony shows it had made, a multitude of contracts with citizens of Kentucky, should be enabled, by simply withdrawing the authority it had given to the insurance commissioner, to compel all these parties to seek the courts of New York for the enforcement of their claims. It is true in this case the association did not voluntarily withdraw from the state, but was in effect by the state prevented from engaging in any new business. Why this was done is not shown. It must be presumed to have been for some good and sufficient reason, and it would be a harsh construction of the statute that, because the state had been constrained to compel the association to desist from engaging in any further business, it also deprived its citizens who had dealt with the association of the right to obtain relief in its courts. We conclude, therefore, that the service of summons on the insurance commissioner was sufficient to bring the association into the state court, and, there being nothing else to impeach the judgment, it must be considered as valid."

While it is true that in this Phelps Case the court incidentally remarks that the record shows that the insurance company was doing business in the state of Kentucky at the time of the service of process, I construe the decision as holding, not that such fact was necessary to the conclusion reached, but that the Kentucky statute, as construed by the Court of Appeals was a valid legislative act.

In Groel v. United Electric Co., 60 Atl. 822, 69 N. J. Eq. 397, may be found a very elaborate discussion, with copious citations, of the questions here involved. The court, in referring to the Phelps Case, says:

"The defendant, however, insists that service upon a designated agent, excepting while the corporation is actually engaged in business in the state or after its withdrawal from business in the state, is not due process of law, and that the Supreme Court of the United States would therefore condemn a statute which authorized such service. A consideration of the reasoning of that court upon the subject-matter makes it difficult to see how this contention can be sustained; and I think that its decisions likewise indicate that

it has already decided the contrary, or has intimated that it will so decide when called upon so to do."

And thereupon an extract is quoted from the Phelps Case, supra.

See, also, Davis v. K. & T. Coal Co. (C. C.) 129 Fed. 149; Hadley v. Standard Oil, 91 S. W. 1066, 194 Mo. 124; Forrest v. Bridge Co., 116 Fed. 357, 53 C. C. A. 577.

My conclusion upon this phase of the case is that it is within the power of a state to provide by statute that before any corporation shall transact business within its borders such corporation shall designate an agent in the state, or consent that the incumbent of a certain office within the state shall be its agent, for the service of process in any suit in the courts of such state involving a controversy growing out of the business transacted by such corporation within the borders of such state, whether such suit be brought before or after the corporation ceases to do business, and that a corporation, having assented to such statutory provisions and designated an agent, must respond to process served upon such agent in the mode prescribed by law.

There still remains to be considered the question whether or not the act of the Idaho Legislature, in compliance with which North was appointed, contemplates that a valid service may be made upon the designated agent after the corporation has ceased to do business in the state. It is unfortunate that, in this respect, the act has not received an interpretation by the Supreme Court of Idaho, whose construction I would be inclined, if not required, to follow. It is doubtless possible to construe the act so as to confine the authority of the agent to the period during which the corporation transacts business; but it must be conceded that such a limitation is not found in the language of the act and must be read into it by implication. The act expressly provides that:

"Such notice and designation of agent on whom process may be served shall run from the time of filing same, as herein provided, until his successor is appointed by such filing or such office becomes vacant by resignation filed by such agent in the office in which his appointment is filed or by his death or removal from such county."

Under the express terms of the law, therefore, North was at the time of the service in question apparently the duly authorized statutory agent of the defendant, and only by construing the act to be limited to the period during which a corporation is actually "doing business" in the state can the defendant be relieved of the effect of a legal service. The language of the Kentucky statute involved in the Muehl Case, supra, is, in my judgment, more readily susceptible of such construction than is the language now under consideration; but the Court of Appeals of that state expressly held, in the case above cited, that service after the corporation had ceased to do business in the state was valid, and in the Phelps Case, cited supra, the Supreme Court of the United States approved of this construction in the following language:

"As an original question, and independently of any expression on the part of the Court of Appeals, we are of the opinion that such is the true construction. This and other kindred statutes enacted in various states indicate the

purpose of the state that foreign corporations engaging in business within its limits shall submit the controversies growing out of that business to its courts, and not compel a citizen having such a controversy to seek the state in which the corporation has its home for the purpose of enforcing his claims."

It is doubtless true that the defendant, without great difficulty, could have so arranged its affairs when it ceased to do business in the state that valid service could not have been made upon North; for the act under consideration does not make adequate or comprehensive provision for all contingencies. But it does not necessarily follow that, because inadequate provision was made, it was not intended to make any provision at all. The general purpose of the act is obvious. It is to enable persons transacting business with a foreign corporation in this state to compel such corporation to litigate, in the courts of this state, controversies growing out of such business. If this right to sue virtually ceases the moment the corporation terminates its active business operations in the state, the purpose of the act is substantially frustrated. So long as the corporation is actively carrying on business in the state, it can be "found" in the persons of its business agents, upon whom process may therefore be served; and the function of an agent appointed under the statute solely for the service of process does not become highly important to persons who have dealt with the corporation until it has ceased to do business in the state.

And what reason, in justice, can be given why I should reject the literal meaning, and seek for a construction of the act which would render a service like this ineffective? Whether the cause of action grow out of a contract or be on account of a tort, presumably, as a rule, it can be litigated with less expense and inconvenience and with more equality in the territory where the transactions took place than in a distant state. In the present case the conditions are not extreme or extraordinary; but, if I adopt a construction of the act under consideration favorable to the defendant's contention, the plaintiff, in order to assert his claim, must institute suit in the state of New York, thousands of miles away from the jurisdiction in which the cause of action accrued. And it is difficult to imagine what benefit would thus accrue to the defendant, other than that arising from the disadvantage to the plaintiff, which would necessarily ensue and which has no relation to the merits of the case. The physical conditions out of which the cause of action grew are here, and they can be more easily and economically reproduced in a court in Idaho than in a court in New York. If there is any presumption at all, it is that more witnesses for either party are in reach of the process of the courts in Idaho than of the courts in New York; and certainly it would not be contended that in general the courts of a foreign jurisdiction would have any advantage over the courts where the cause of action arose in properly construing and applying the local laws and customs to a correct adjudication of the controversy upon its merits.

Moreover, while with a literal construction the practical application of the law is not entirely free from embarrassment, its efficient administration, if it be construed as contemplating service of process only while the foreign corporation is engaged in business, will be rendered extremely difficult, if not, in a great many cases, wholly impossible.

As the court records disclose, it is often a matter of extreme nicety to determine whether or not, at the time of service, a corporation was, in contemplation of law, "doing business" within the state; and under such interpretation the sufficiency of the attempted service upon a designated agent would not infrequently be more difficult of adjudication than the merits of the controversy, for the moment a foreign corporation ceased in fact to "do business," however extensive its operations may have theretofore been, it would cease to be amenable to the process of the courts in Idaho, notwithstanding that through the public records of the state it continued to proclaim the authority of its designated agent. And if "doing business" in the state implies, as some courts have held, "corporate continuity of conduct in that respect," a foreign corporation might comply with the requirements of the act by filing its articles of incorporation and designating an agent, so as to have the advantage of that provision which confers upon it like privileges with domestic corporation, and yet flit into the state and out again in such a way that it would be almost impossible successfully to serve process upon it.

I have therefore concluded to hold that this act contemplates that where a foreign corporation, in order to acquire the privilege or franchise thereby conferred of transacting business and holding property in Idaho, has complied with the terms of the act, and has filed articles of incorporation and designated an agent, and has thereupon transacted business in the state, valid service of process in a suit against such corporation involving a controversy arising out of such business may be made upon its agent so designated, whether the service be made before or after the corporation ceases to transact business in the state.

It follows that the motion in each case must be denied, and it is so ordered.