[Civil No. 4523.   Filed September 28, 1942.]

[129 Pac. (2d) 314.]

SOUTHWEST METALS COMPANY, a Corporation, Appellant, v. E. G. SNEDAKER, Appellee.

Messrs. Patterson & McFate, for Appellant.

Messrs. Cornick & Carr, for Appellee.

LOCKWOOD, C. J.—Southwest Metals Company, defendant, was a corporation organized under the laws of Delaware for the purpose of conducting a general mining and smelting business. The property of the corporation consisted, among other things, of certain mining claims known as the Blue Bell and DeSoto mines. The mining and smelting activities of defendant ceased in 1930 or 1931, and it conducted no active operation subsequent to that time. The last meeting of its board of directors was held on January 31, 1935, at which time Henry R. Lathrop was president, Paul O. Jadwin vice-president, and Clarence A. Hastings secretary-treasurer of the corporation. Defendant failed to pay the state, county and school district taxes assessed against its mining properties for the year 1935 and they were sold to the state of Arizona under treasurer's certificate of purchase at a tax sale on November 12, 1936. On August 18, 1941, this certificate was assigned to E. G. Snedaker, plaintiff herein, upon the payment of the taxes, interest and penalties due under the certificate, and also all taxes for the subsequent years 1936 to 1940, inclusive. Plaintiff brought suit against defendant and others to foreclose the tax lien, and secured judgment.

On February 14, 1930, Sheldon Mining Company, a corporation, became the owner of 1,335,000 shares of defendant's stock, being approximately 90% of the entire outstanding capital stock. The remaining outstand-

ing stock was owned by some four hundred stockholders, among them being George M. Colvocoresses.

On September 10, 1936, Sheldon Mining Company sold and delivered the certificates of stock representing its interest in defendant corporation to one Roscoe Hurst. The officers and directors of defendant then resigned in writing, and these resignations were delivered to Hurst, together with the stock books and minute records. At the time of the sale it was agreed by the Sheldon Mining Company and Hurst that he was to pay for and affix the federal revenue transfer stamps on the stock, and that the stock and minute books of defendant were turned over to him so that he could reactivate the corporation and operate or dispose of its remaining property. In 1937 the certificates were sold to a man by the name of Ryall, and later assigned by him to one Petzold, the brother-in-law of Bernard A. Clark. They finally were in some manner transferred to Clark. The federal stock transfer tax was never paid on any of these transfers, nor was the stock transferred on the books of the company. During all of these transactions in regard to the stock Clark was interested in the certificates and the transfers either as owner, part owner, or counsel for the owners of the stock.

Defendant for the year 1936 failed to make any annual report and pay the annual registration fees required by the law of Arizona and also required by the state of Delaware, the domicile of the corporation, failed to make the federal capital stock return and pay the taxes due thereon, and permitted the corporation to be dissolved, in accordance with the laws of the state of Delaware, on April 1, 1939.

Colvocoresses, up to October of 1929, had been the general manager and a director of defendant, owning about 30,000 shares therein. Sometime after 1935 he secured an option on the stock of the Sheldon Mining Company, and it was by virtue of the assignment of this

option by Colvocoresses that Hurst purchased the stock. Thereafter, and up to February 25, 1938, Colvocoresses had considerable correspondence with Hurst and Clark in an effort to reactivate and refinance the corporation. On the date last mentioned he wrote to them, giving a detailed analysis of the situation, and stated:

"If neither of you can see your way clear to accept this program, with such modifications as may be agreed upon, then I can only repeat that I must definitely and finally disassociate myself from both of you in this enterprise and thereafter I shall feel entirely free to make use of my data, knowledge and services in any way that I may see fit, and for the benefit of any other parties who may believe that these will have a tangible value."

On December 8, 1939, he wrote to Clark again, offering his services in regard to the matter, and said:

"An adverse conclusion can doubtless be definitely assumed in the event that I fail to hear from you by December 18."

Thereafter he had no further relations or communications with Clark or defendant. Sometime thereafter he interested plaintiff in the idea of purchasing the Blue Bell and DeSoto mining claims under the tax sale, which was carried out as above set forth.

When the suit to foreclose the tax lien was filed, Alfred B. Carr, one of the attorneys for plaintiff, made affidavit as follows:

"That defendant Southwest Metals Company was a corporation duly organized and existing under the laws of the State of Delaware, and *was a resident and citizen of Wilmington, State of Delaware, but now is dissolved.* That said company is a non-resident of this state, has property or interests in property therein, *but has no legally appointed and constituted agent in this state upon whom process may be served."* (Italics ours.)

Thereafter publication of summons was duly made in the manner provided by statute, but no copy of the summons and complaint was ever addressed to defendant, or any officer or director thereof, and deposited in the United States post office. Shortly after the judgment of foreclosure of the tax lien was rendered, Clark learned of the judgment and came to Arizona to investigate the matter. On December 15, 1941, defendant, through Clark, filed a motion to set aside the judgment for lack of jurisdiction, and one to vacate it, and permit a redemption under section 21–1309, Arizona Code 1939. The motion to set aside the judgment for lack of jurisdiction was based on the claim that at the time service by publication was made defendant had a statutory agent in Arizona upon whom service of process could be had according to law, and that plaintiff knew the post-office address of defendant, its officers and directors, and deliberately and willfully concealed this fact from the court, and failed to mail any of them a copy of summons and complaint as required by law. The motion to vacate and permit redemption was based on the Arizona statute providing for setting aside a judgment within one year when service was obtained by publication, if a meritorious defense was presented. § 21–1309, *supra*. The motion reads as follows:

"Comes now Southwest Metals Company, a corporation, defendant herein, and in event the motion to vacate judgment for lack of jurisdiction heretofore filed be not granted by the Court, moves the Court for an order vacating said judgment and granting a new trial herein under the provisions of Section 21–1309, Arizona Code Annotated 39, so as to afford the said defendant an opportunity to redeem from the tax sale mentioned in said judgment on the ground that service of summons herein was obtained by publication and that less than one year has expired since the date of said judgment; that the defendant Southwest Metals

Company, a corporation, has never appeared herein and was never personally served with summons herein, and is able, ready and willing to redeem from the tax sale. . . . ''

and was supported by an affidavit of Clark which reads:

"That affiant is advised and believes that said corporation has a valid and substantial defense to the said action and to the whole thereof in this, to-wit: That said corporation is ready, able and willing to redeem from said foreclosure suit and to pay to the plaintiff the full amount of taxes, interest and penalties to which the said plaintiff may be lawfully entitled in order to redeem as aforesaid.''

Together with these motions defendant deposited $1,796.49 with the clerk of the court as a tender of the amount due in order to obtain redemption, and later stated in open court that if any more was demanded it was in a position to pay it. Apparently there was no contention in the trial court at this time that the amount of the tender was insufficient, although it is claimed that later on in the oral argument made to the trial court this objection was made. This oral argument, however, does not appear in the record.

The foregoing facts are not seriously in dispute, and we will discuss the controverted matters as it appears necessary.

The motions were submitted to the trial court and taken under advisement, and an order was finally made denying the motions to vacate the judgment and permit redemption, and to set aside the judgment for lack of jurisdiction, whereupon this appeal was taken.

The first question which we consider is whether the attorneys who appeared as representing defendant have a right to represent it. It is urged by plaintiff that Clark was never the attorney for the corporation itself, that he was not authorized by the officers and directors of the corporation to appear and present the

motions in question, and that he did not and could not appear as a stockholder because no showing was made that request had been made of the directors that they act.

The situation presented is a peculiar one. At the time the action was brought the officers and directors of the corporation had resigned and took no further interest in its affairs, and the corporation had been dissolved in the state of its domicile. The Delaware statute applicable, being No. 2074, section 42, Revised Code 1935, reads as follows:

"*Continuation of Corporation After Dissolution For Purposes of Suit, Etc.:*—All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock but not for the purpose of continuing the business for which said corporation shall have been established; provided, however, that with respect to any action, suit or proceeding begun or commenced by or against the corporation prior to such expiration or dissolution and with respect to any action, suit or proceeding begun or commenced by the corporation within three years after the date of such expiration or dissolution, such corporation shall only for the purpose of such action, suits or proceedings so begun or commenced, be continued bodies corporate beyond said three-year period and until any judgment, orders, or decrees therein shall be fully executed."

It is evident that the corporation, notwithstanding it was dissolved, had the right to protect its property interests for the purpose of seeing that the assets were properly divided among the stockholders. The question is as to whose right and duty it was to protect such interests. A strong argument may be made to the

effect that, technically speaking, only the officers and directors can maintain an action of this nature through a formally appointed attorney, and that the record does not show Clark was so authorized to act. In view, however, of the fact that he was the equitable owner of approximately 90% of the stock of the corporation, and that the officers and directors had long since resigned and ceased to act in any manner on its behalf, we think the better rule is that he be permitted to appear and defend what was substantially, although not technically, his own property. This was evidently the view taken by the trial court, for if it had held otherwise it would not have permitted the case to proceed further after the objection was raised.

. We hold, therefore, that the court had jurisdiction to entertain and consider the motions. The question of whether the local counsel, Patterson & McFate, were authorized to appear, of course depends upon the right of Clark.

The next question is whether the court had jurisdiction to render judgment against defendant foreclosing the tax lien. This depends upon whether defendant was properly served with process. Section 21–306, Arizona Code 1939, reads so far as material as follows:

"*Summons—Service by publication.*—When a party to the action shall, at the time of instituting the action or at any time during its progress, file an affidavit in the action, that the defendant is . . . a corporation incorporated under the laws of any other state or foreign country, . . . having property therein, but having no legally appointed and constituted agent in this state, . . . a summons shall be issued as in other cases, and service shall be made by publication thereof in some newspaper published in the county, if there be a newspaper published therein, but if not, then in a newspaper published in the nearest county, where the action is pending, at least once in each week for four (4) successive weeks, and the service shall be complete thirty (30) days after the first publication. When the resi-

dence of the defendant is known to the party the same shall be stated in the affidavit, and the party shall forthwith deposit a copy of the summons and complaint in the post-office, postage prepaid, directed to the defendant at his place of residence, and the affidavit of the person so mailing said copies shall be *prima facie* evidence thereof; if the residence is unknown it shall be so stated.''

■ The three essential allegations in an affidavit for service by publication on a nonresident corporation defendant, under the statute above quoted, are (a) that defendant has property in the state; (b) that it has no legally appointed and constituted agent in the state; and (c) a statement either giving the residence of defendant, or stating that it is unknown.

■ We think the affidavit was sufficient on its face to authorize a publication of summons. While it does not specifically state the residence of the corporation is unknown, it says the corporation is dissolved, which in effect means it is no longer existing. A non-existing corporation presumably has no residence. It is urged, however, that it was actually false in two particulars, one that there was a statutory agent in the state of Arizona upon whom process might be served, and two, that the residence of defendant was known to plaintiff, so that in addition to the publication of the summons, it was necessary that a copy of the summons and complaint be mailed to it.

In support of the claim that it had a statutory agent in Arizona at the time the affidavit was filed, defendant showed that in 1929 the following instrument was filed with the Arizona Corporation Commission:

''Appointment of Agent

''Know All Men by These Presents: That Southwest Metals Company, a corporation organized under the laws of Delaware, does hereby appoint Joseph H. Morgan of Prescott, Arizona, who has been a *bona fide* resident of Arizona for at least three years, its lawful

agent in and for the State of Arizona for and in behalf of said Company, to accept and acknowledge service of, and upon whom may be served, all necessary process or processes in any action, suit or proceeding that may be had or brought against the said Company in any of the Courts of said State of Arizona, such service of process or notice, or the acceptance thereof by said agent endorsed thereon, to have the same force and effect as if served upon the President and Secretary of said Company, the said Corporation hereby revoking any appointment of agent heretofore made by it for the purpose designated.

"In Witness Whereof, the said corporation has caused these presents to be signed by its President, and attested by its Secretary, at 111 John Street, New York City, in the State of New York this 20th day of December, 1929.

"H. R. Lathrop
"President

"By the President of the Southwest Metals Company
"Attest:
 "C. A. Hastings
 "Secretary    (Corporate Seal)"

that no revocation thereof was ever filed with the said commission, and that the Joseph H. Morgan referred to therein was at all times a resident of Prescott.

Plaintiff counters this with the claim, (a) that the appointment does not show affirmatively that it was made by the authority of the board of directors of the corporation, and (b) that long before the filing of the affidavit of service above set forth Joseph H. Morgan, who was named in the appointment as statutory agent, had to the knowledge of plaintiff repudiated the appointment and refused to serve any longer as such agent.

So far as the original appointment is concerned, we think that the filing of the appointment of a statutory agent, which is under the seal of the corporation and signed by the president and secretary, stating that

the corporation has appointed a certain person, is *prima facie* evidence that the appointment was in all respects legally made, and the burden is upon anyone questioning the appointment to show that it was not.

In the case of *Big 4 Advertising Company* v. *Clingan,* 15 Ariz. 34, 135 Pac. 713, 714, the question of the method of appointment of a statutory agent was before this court. It appeared that no regular or special meeting of the board of directors of the corporation had been held for the purpose of appointing the agent, but that the president and secretary of the corporation, who were also directors, had executed the appointment. The court said:

"The appointment of this agent is enjoined upon the corporation by law. It is the duty of the board of directors to see that the law's requirements are observed. Appellee, as a director, owed that duty to the Corporation in no less degree than the other directors. May he withhold his approval of the appointment made by the president and secretary and use his refusal to perform a duty to his company as the foundation of a suit to disincorporate his company? We think not.

"The most that can be said of the appointment as made by the president and secretary is that it is irregular. Doubtless service of process on the agent thus appointed would be a good and legal service upon the corporation. The corporation would be estopped to deny the regularity of the appointment of the agent designated and recorded as such by the president and secretary of the company."

It is true that in that case the corporation itself was questioning the regularity of the appointment, while in the present case it is questioned by the opposite party. We think, however, the same principle applies to the facts in the present case.

We hold, therefore, that the original appointment of the statutory agent, so far as this case is concerned, must be considered as valid. A more serious question involved, however, is whether the agent, hav-

ing been duly appointed, may resign and refuse to act in that capacity, so that notwithstanding the appointment has never been formally revoked, a publication of summons is valid. There are a number of cases where this question has arisen. In some of the states the statute expressly provides that the appointment of an agent shall be valid until it is formally revoked by a resignation "filed by such agent in the office where his appointment is filed" or until the death or removal of the agent. Under such a statute, of course, the informal resignation or refusal to act does not permit the publication of summons, and service must be made in the usual manner on the agent. *Green* v. *Equitable Mut. Life & Endowment Ass'n.*, 105 Iowa 628, 75 N. W. 635; *Hill* v. *Empire State-Idaho M. & D. Co.*, C. C. 156 Fed. 797. Our statute, however, is silent upon the question as to how the agent may resign or be removed. § 53–305, Arizona Code 1939. In the cases of *Gerrick & Gerrick Co.* v. *Llewellyn Iron Works,* 105 Wash. 98, 177 Pac. 692, and *Forrest* v. *Pittsburgh Bridge Co.,* 7 Cir., 116 Fed. 357, it was held, in substance, that where the statute did not expressly provide a manner in which the revocation of the authority of the statutory agent might be made, that when the agent resigned or refused to act, service upon the agent was not either necessary or, indeed, valid.

It may be that in cases where the agent was served by a party who did not know of his resignation or refusal to act, that the corporation would be estopped from questioning the validity of such service, but where, to the knowledge of a plaintiff suing a corporation, the agent has resigned or refused to act, we think that an affidavit that the corporation has no statutory agent within the state is supported by the facts and that service by publication may be had as though no agent had ever been appointed, or he had died since the appointment.

■ ■ We hold, therefore, that both on the facts and the law plaintiff was authorized to serve defendant by publication. The statute, however, requires that notwithstanding service is made by publication, if the residence of the defendant is known, there must also be mailed to him a copy of the summons and complaint, and that if the residence of the defendant is unknown so that the mailing of notice be unnecessary, such fact must be stated in the affidavit. The affidavit states that the residence of defendant was at one time in Wilmington, Delaware, but that the corporation had been dissolved. The dissolution of a corporation corresponds to the death of an ordinary person, and certainly if a party has died, his address is unknown to the living. The statute of Delaware, however, provides that for the purpose of prosecuting or defending suits, the corporation lives for three years after its dissolution. Defendant was, therefore, for the purpose of this suit still a living organism, and if it had a residence which was known to plaintiff it should have been served by mail in the manner provided by statute, or if the residence was unknown, the affidavit should have so stated. The evidence, however, shows that to the knowledge of plaintiff the corporation, while technically existing for the purpose of suit, had no officers functioning and maintained no office. Under such circumstances, we think that plaintiff was not required to mail the copy of summons and complaint.

■ It is urged that Colvocoresses at all times knew the address of the man who had been president of the corporation up to 1935, and that since his resignation had not been formally accepted by the defendant, he was still its legal representative for the purpose of summons, and that a copy of the summons and complaint should have been mailed to him.

The question is not without its difficulties, but we think that upon the facts as shown by the record in this case the mailing of a copy of the summons and complaint to the former president of the corporation was not required, and that the service by publication was valid. The court, therefore, had jurisdiction to hear the action foreclosing the tax lien as against defendant and to render judgment thereon.

The next question is as to whether the court erred in overruling the motion to vacate the judgment, and to permit defendant to appear and defend. This motion is based on the provisions of section 21–1309, *supra,* which reads so far as material as follows:

"*New trial after service by publication—Superseding judgment.*—When judgment has been rendered on service by publication, and the defendant has not appeared, a new trial may be granted, upon the application of the defendant, for good cause shown by affidavit, made within one (1) year after rendition of such judgment. . . ."

██ ██ The service in this case being by publication, the trial court had the power, if by affidavit a good cause was shown, to set aside the judgment and grant a new trial. It is true the statute uses the language "may be granted," which leaves the question discretionary with the trial court, but this discretion is a sound judicial discretion and an abuse thereof, either by granting or refusing to grant the motion, is reviewable by this court.

We think that if a meritorious defense was presented to the trial court which was of such a nature that, if proved, it would necessarily and as a matter of law require a judgment in favor of defendant, it was an abuse of discretion to refuse to vacate the judgment. *Gordon* v. *Gordon,* 35 Ariz. 532, 281 Pac. 215. What was the defense shown? It was that defendant was ready, able and willing to redeem the

property in the manner required by law. Section 73–834, Arizona Code 1939, referring to tax lien foreclosures, reads in part as follows:

"*Redemption after suit commenced and before judgment—Costs and attorney's fees—Actions by state.*— At any time prior to the entry of such judgment any person who is entitled to redeem under the provision of this act, may do so as in other cases, notwithstanding that such suit has been commenced; provided, that if such redemption be made by any person who has been served personally or by publication in such action, judgment shall be entered in favor of the plaintiff against such person for the costs incurred by plaintiff, together with a reasonable attorney's fee to be determined by the court. . . ."

It is clear from this section that the payment of the amount required for redemption of the property, including costs incurred by plaintiff and a reasonable attorney's fee, to be determined by the court at any time before final judgment, would have been a full, complete and absolute defense to an action seeking to foreclose a tax lien, and the court would have been compelled to render judgment in favor of defendant. The affidavit and motion state that defendant is ready, able and willing to redeem. Unless it appeared that such affidavit was untrue, we think it was an abuse of discretion for the trial court to refuse to set aside the judgment foreclosing the tax lien in order that defendant might make redemption, which he would then have an absolute right to do under the law.

It is contended by plaintiff, however, that the tender which defendant paid into court was not sufficient, in that it did not include the amount of taxes due for the year 1941, the costs of suit and a reasonable attorney's fee. It must be remembered that in an affidavit showing a meritorious defense on a motion to set aside a default judgment it is not necessary

that the evidence supporting such defense be presented to the court. The presumption is that the party will be able to prove the facts stated therein, and he must, in the absence of some showing that his affidavit is untrue, be permitted to offer evidence supporting the affidavit at a new trial. Not only did defendant actually pay into court the full amount which plaintiff had paid for the tax lien, but it was avowed that if there was any more demanded defendant was in a position to pay it, and this avowal was not contradicted by anything appearing in the record. Nor could defendant have tendered the attorney's fees in advance, for it had no means of knowing at what figure they would be fixed by the court.

The picture presented by the undisputed evidence may be stated briefly as follows: Clark was the equitable owner of 90% of the stock, and, therefore, the assets of defendant. Colvocoresses owned 2%. The latter had been urging Clark for some time to advance the money necessary to save the property of the corporation from being lost to it. For some reason, Clark did not see fit to do so. After several years had elapsed, both Clark and Colvocoresses discovered that the property probably did have a great and immediate value, due to circumstances not brought about by either party. Colvocoresses then induced Snedaker to purchase the tax lien thereon, and bring a suit to foreclose the lien, of which neither defendant nor Clark had actual notice until after judgment had been rendered. Immediately upon discovery of the situation, Clark took every step possible to cause defendant to be given an opportunity to redeem from the tax sale, a thing which it had the absolute right to do if it had appeared in the foreclosure suit before judgment was rendered.

If redemption is made, plaintiff will receive all that he has expended, while Colvocoresses will be entitled

to the proportion of the assets of the corporation represented by his 2% of stock. If redemption is not permitted, plaintiff will acquire title to the property for the payment of the taxes, while the interests of defendant will be entirely wiped out. We think under all the circumstances the trial court abused its discretion in not setting aside the judgment and giving defendant the right to redeem the property in accordance with the statute.

The order is set aside and the case remanded with instructions to vacate the judgment and grant a new trial to defendant.

McALISTER and ROSS, JJ., concur.