668 P.2d 896

James B. CONNOR, Kevin E. O'Malley, and Jon A. Titus, Plaintiffs-Appellees,

v.

CAL–AZ PROPERTIES, INC., a California corporation; and Gary Malmstrom, Defendants-Appellants.

No. 1 CA–CIV 6406.

Court of Appeals of Arizona, Division 1, Department D.

July 21, 1983.

James B. Connor, Tempe, Kevin E. O'Malley, Jon A. Titus, Phoenix, in pro per.

Wentworth & Lundin by William J. Reckling III, Phoenix, for appellants.

OPINION

MEYERSON, Judge.

The primary issue in this appeal concerns the propriety of an award of attorneys' fees to plaintiffs-appellees, three attorneys who appeared *in propria persona* in this matter. The trial judge found that conditions precedent to a real estate purchase contract were not fulfilled and ordered that plaintiffs be refunded their deposit and awarded them attorneys' fees. We affirm the ruling of the trial court with respect to the merits of this action, but reverse the award of attorneys' fees.

## I. FACTS

Plaintiffs-appellees James B. Connor, Kevin E. O'Malley, and Jon A. Titus (buyers) brought this action against defendants-appellants Cal-Az Properties, Inc. and Gary Malmstrom (sellers) (as well as other defendants who are not parties to this appeal), seeking the return of $2,500 deposited as earnest money on a real estate purchase contract. The parties entered into a contract for the sale of real property on December 2, 1980. The contract provided that $100,000 of the purchase price would be paid "by [a] new conventional loan (renegotiable)." The contract further provided that it was "contingent on [the] property appraising for at least [the] sales price and buyers qualifying for and obtaining above loan. Buyer to pay for appraisal and cost of securing loan. Buyer to apply for loan within three working days."

Three days later, buyers met with a representative of Western American Mortgage Company (Western American) to arrange for the financing. Credit information was obtained and the mortgage company submitted the buyers' application for a renegotiable, conventional loan to Greater Arizona Savings and Loan Association which ultimately refused to extend credit to the buyers.

Western American also arranged for an appraisal to be done on the property. The first appraiser valued the property at $134,900 by the cost approach and $130,000 by the market approach. The sales price of the property was $164,500. The initial appraisal was not completed and submitted as a "formal" appraisal because it was below the sales price. A subsequent appraisal was arranged which reflected the value of the property at exactly the sales price. Because the initial appraisal was not at the sales price and because the buyers failed to obtain financing in the form of a renegotiable, conventional loan, they concluded that the conditions stipulated in the real estate contract were not met and demanded the return of their deposit. After the sellers refused, the buyers instituted the present action.

The trial judge granted the buyers' motion for summary judgment. Buyers were granted judgment in the amount of $2,500 and sellers were further ordered to pay $1,250 in attorneys' fees. Sellers then brought this appeal.

## II. REFUND OF THE DEPOSIT

Sellers contend that the trial court erred in granting summary judgment with respect to their obligation to return the buyers' $2,500 deposit. Sellers contend that there were disputed issues of material fact which made the granting of summary judgment improper. We disagree.

The real estate purchase contract contained two contingencies—the property appraising for at least the sales price and buyers qualifying for and obtaining a renegotiable, conventional loan. Because we find that the first condition precedent— that the property appraise for at least the purchase price—was not satisfied, we need not reach the second condition concerning the renegotiable, conventional loan. The condition failed when the appraiser of the property valued it at $134,900 by a cost approach and $130,000 by a market approach, far less than the sales price of $164,500.[1] When an express condition of a contract for the purchase of real estate fails,

---

1. The initial appraisal was not submitted as a "formal" appraisal because it did not meet the buyers' requirements under the contract. We find no merit to sellers' argument that this appraisal may not be considered because it was not a "formal" appraisal.

the contract will not be enforced. *Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 105 Ariz. 329, 332, 464 P.2d 612, 615 (1970).

Although a subsequent appraisal was secured for the exact purchase price, that would hardly have been much comfort to the buyers after the first appraisal came in far below the sales price. The condition pertaining to the appraisal was inserted for the benefit of the buyers who could legitimately conclude that based upon the initial appraisal the property did not appraise at the sales price. Likewise, it was not error for the trial judge to conclude that the property did not appraise at the sales price.[2] Because the initial appraisal was less than the sales price, the buyers were entitled to enforce the condition and thereby cancel the agreement. Hence, the trial judge correctly concluded that buyers were entitled to the return of their $2,500 deposit.

## III. ATTORNEYS' FEES

The buyers, all attorneys, represented themselves in these proceedings. According to Mr. O'Malley's affidavit, the three attorneys spent 45.7 hours in connection with the litigation and claimed that the value of their time was $60 per hour. Thus, they requested attorneys' fees in the amount of $2,742 which was reduced by the trial court to $1,250. Buyers sought these fees pursuant to A.R.S. § 12–341.01 and a provision in the real estate contract which provided that in the "event Buyer or Seller shall file suit against the other to enforce any provision of this contract, or for damages sustained by reason of its breach, all the parties prevailing in such action, on trial and appeal, shall receive their reasonable attorney's fees and costs awarded by the court."

■ The question before us is whether under the terms of the contract or the statute, attorneys who appear on their own behalf and who prevail in litigation, are entitled to receive a fee award. We need

not consider, however, the claim for fees under the statute. Where "parties have provided in the contract the conditions under which attorney's fees may be recovered," A.R.S. § 12–341.01 is not to be considered. *Sweis v. Chatwin*, 120 Ariz. 249, 252, 585 P.2d 269, 272 (Ct.App.1978). Thus, we limit our discussion to the fee provision contained in the real estate contract.

Courts have split on the issue of whether attorneys who represent themselves can be awarded fees for such representation. In a case awarding fees to attorneys appearing on their own behalf, the Supreme Court of Oklahoma in *Weaver v. Laub*, 574 P.2d 609 (Okl.1977) summarized the policy considerations raised in other jurisdictions. Courts declining to grant fees under such circumstances have found that one should not become one's own client and charge for professional services and that attorneys representing themselves might be tempted to protract litigation for their own financial betterment. *See, e.g., Westenberger v. Bernard*, 160 So.2d 312 (La.App.1964); *Van-Hooser v. Cunningham*, 24 Tenn.App. 480, 146 S.W.2d 840 (1941). Other courts have denied fees based upon statutory construction. *O'Connell v. Zimmerman*, 157 Cal. App.2d 330, 321 P.2d 161 (1958). Courts which have awarded fees to attorneys representing themselves have found that the lawyers have expended their professional time, knowledge and experience and because their legal services are valuable, like other professionals, they ought to be compensated for their time. *See, e.g., Wells v. Whinery*, 34 Mich.App. 626, 192 N.W.2d 81 (1971); *Winer v. Jonal Corp.*, 169 Mont. 247, 545 P.2d 1094 (1976).

■ Although these prior decisions are helpful, they are not completely dispositive. Most courts distinguish between compensation for non-attorneys appearing on their own behalf and attorneys appearing on their own behalf; however, we see no sig-

---

**2.** Sellers contend that the contract did "not require that *all* appraisals value the Property at the sales price." This is a correct statement as far as it goes. The contract was contingent on the property "appraising for at least the sales price ...." The initial valuation, at substantially below the sales price, according to two methods of appraisal, supports the trial judge's conclusion that the property did not appraise at the sales price.

nificant distinction. In Arizona, one who acts only for himself in legal matters is not considered to be engaged in the practice of law. *State ex rel. Frohmiller v. Hendrix,* 59 Ariz. 184, 190, 124 P.2d 768, 772 (1942). Even though the buyers in this case were themselves all attorneys, and carried out tasks ordinarily performed by lawyers, their activities did not constitute the practice of law because they represented themselves. Thus, for the purposes of our analysis, it makes no difference that the buyers, all appearing on their own behalf, were attorneys licensed to practice law in this state.

■ In our opinion, the presence of an attorney-client relationship is a prerequisite to the recovery of attorneys' fees. The "creation of the relation of attorney and client ... is essential to the right of an attorney to recover compensation for his services rendered.". 1 S. Speiser, Attorneys' Fees § 4:1 at 147 (1973); *see Great Western Bank & Trust v. Myers,* 109 Ariz. 542, 544, 514 P.2d 463, 465 (1973). Because an attorney has no right to recover compensation in the absence of an attorney-client relationship, the corollary must necessarily be true—a party who represents himself in litigation has no right to be compensated by the payment of attorneys' fees because of the absence of an attorney-client relationship.

The buyers make one point which we believe deserves particular attention. They contend that because the amount in controversy in the lawsuit, $2,500, was relatively small, they could not have afforded to pursue this action if they were not attorneys, and representing themselves. Indeed, most non-attorney litigants are precluded from retaining counsel to prosecute claims where the cost of legal representation exceeds the amount in dispute. We cannot, however, have one rule which provides for compensation to attorneys when acting on their own behalf and another rule for lay persons acting on their own behalf. We cannot compensate the buyers here, who as attorneys could not have vindicated their claim but for the fact that they appeared on their own behalf, and yet deny compensation to

lay persons who litigate on their own behalf for the same reason.

The problem of insuring access to the courts will not be solved by the proposal of the attorney-litigants in this case. To grant fees to parties appearing *pro se* will, in our view, create incentives to protract and delay litigation. It may well foster litigation over specious claims and in many cases the prospect of a fee award could well be the principal motivating factor behind a lawsuit. In particular, the leverage which would be granted to attorneys appearing on their own behalf could easily become oppressive where the opposition is forced to incur legal expenses.

The buyers' argument, however, touches on an issue of vital concern for the administration of justice in this country. The buyers apparently recognize, as does this court, that it is increasingly difficult for Americans with modest means to secure meaningful access to the courts on claims involving relatively small sums. *Hackin v. Arizona,* 389 U.S. 143, 88 S.Ct. 325, 19 L.Ed.2d 347 (1967) (*per curiam*) (Douglas, J., dissenting). As United States Supreme Court Justice Sandra D. O'Connor said recently:

> [T]he time and the cost required to go to court on consumer complaints often exceeds the amount of the dispute. The consumers then may burn with inner frustration because they don't know how to have their complaints considered at a price they can afford.

Address by Justice Sandra D. O'Connor, First National Conference on Alternative Consumer Dispute Resolution (Jan. 17, 1983). Every segment of the legal community has a responsibility to address this pressing national problem. And indeed, some progress has been made through the establishment of legal services programs for the poor, bar-supported *pro bono* programs, small claims court, mandatory arbitration, alternative methods of dispute resolution, public interest law, and charitable representation done by lawyers in private practice. But despite these efforts, everyone concedes that the problem exists and it is growing. ABA, Report on the National Conference

on Minor Disputes Resolution (May 1977). The dimensions of this pressing issue, and proposals for reform, however, are best considered by a full inquiry and examination which should be done initially in the legislative forum or by the private bar.

For the foregoing reasons, the judgment granting buyers the return of their deposit is affirmed and the judgment granting attorneys' fees is reversed. This matter is remanded to the trial court for proceedings consistent with this opinion.

HAIRE, P.J., and EUBANK, J., concur.