742 P.2d 858

**HUNT INVESTMENT COMPANY, Plaintiff-Appellant, Cross Appellee,**

v.

**Bradfield F. ELIOT and Janet Eliot, husband and wife, Defendants-Appellees, Cross Appellants.**

**1 CA–CIV 9052.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 1, 1987.

Jack H. Simon, Mesa, for plaintiff-appellant/cross appellee.

Teilborg, Sanders & Parks, P.C. by Richard B. Sanders and Coni Rae Good, Phoenix, for defendants-appellees/cross appellants.

## OPINION

GREER, Judge.

This appeal and cross-appeal raise questions concerning the award of costs and reasonable attorney's fees to the plaintiff in a tax lien foreclosure action pursuant to A.R.S. § 42–454. The issues raised on appeal are:

(1) Whether reimbursement of costs incurred by the plaintiff is limited to

"taxable costs," as set forth in A.R.S. § 12–322, and

(2) Whether the trial court abused its discretion by reducing the amount of attorney's fees requested by plaintiff.

The sole issue raised in the cross-appeal is whether the plaintiff was acting as his own counsel, therefore barring his right to any attorney's fees. The trial court awarded the plaintiff attorney's fees and costs. We affirm the trial court.

## FACTS

On or about February 19, 1980, plaintiff-appellant Hunt Investment Company (Hunt) purchased a residence at a tax sale from the Maricopa County Treasurer, for delinquent 1978 taxes of $489.62. Five years later, Hunt filed suit to foreclose the property owner's right to redeem the property pursuant to A.R.S. § 42–454. After being personally served, property owners Bradfield F. and Janet Eliot redeemed the property. The Eliots subsequently filed an answer to the complaint. Hunt thereafter moved for an award of its reasonable attorney's fees and costs, as permitted by A.R.S. § 42–454. It requested $2,040.00 in attorney's fees and $190.58 for costs.

After extensive discovery, the Eliots filed a response to Hunt's motion opposing the requested amount of attorney's fees and costs. The grounds for their opposition to the attorney's fees were:

(1) the claimed fees included time spent reviewing documents on tax parcels and property interests other than the property at issue,

(2) the request included time spent conducting a records review with the county assessor's and county recorder's offices for the names and addresses of defendants which was contrary to the customary practice among attorneys, who generally obtain and rely upon title research reports and litigation guarantees prepared by title companies, which are less expensive,

(3) fees were claimed for communications to and from Transamerica Title resulting from Hunt's counsel's failure to communicate necessary information or his provision of erroneous information,

(4) the fees included an unnecessary redemption check which was made after suit was filed and appellant's counsel had been informed that a redemption would be made, and

(5) the request included fees for Hunt's response and oral argument for attorney's fees and costs in support of his application.

The Eliots also opposed the award of any attorney's fees because they claimed that Hunt in essence represented himself. Hunt Investment Company is an Arizona general partnership consisting of two general partners. One partner is Jack Simon, Hunt's attorney, and the other partner is the Ina P. Hunt Trust. Jack Simon is the trustee for the trust, with the ultimate right to distribute all trust assets to himself, upon the death of certain still-living beneficiaries.

The Eliots opposed the amount of costs claimed by Hunt because not all of them were taxable costs provided by A.R.S. §§ 12–332 and –333. Hunt had sought reimbursement for postage and non-certified copying charges, neither of which are allowed under those sections. The Eliots requested that the costs be reduced by $28.64.

The trial court ultimately awarded Hunt attorney's fees of $400 and $251.94 in costs. The court, in effect, awarded only the taxable costs as authorized by A.R.S. § 12–332, thereby reducing the amount of costs requested by $60.58. The court expressly held that Hunt's counsel was not representing himself. Hence, an attorney-client relationship existed, and attorney's fees could be awarded under A.R.S. § 42–454.

Hunt moved for a new trial on the basis that it was improper for the trial court to reduce the amount of attorney's fees requested and that all costs, rather than just taxable costs, should be awarded. The motion for new trial was denied on March 5, 1986. Hunt filed a timely appeal from the

denial of its motion for new trial and the Eliots filed a cross-appeal on the issue of whether attorney's fees could be awarded at all.

## COSTS

Arizona Revised Statutes § 42–454 provides in pertinent part:

At any time prior to entry of judgment foreclosing the right of redemption any person entitled to redeem under this article may redeem as in other cases, notwithstanding that an action has been commenced. However, if redemption is made by any person who has been served personally or by publication in the action, *judgment shall be entered in favor of the plaintiff against such person for the costs incurred by the plaintiff, together with a reasonable attorney's fee to be determined by the court....* (emphasis added).

Hunt argues that the trial court's failure to award all its requested costs was contrary to the law and public policy. It points out that § 42–454 was intended to afford property owners a last opportunity to recover their property. The intent of the statute was also to encourage people to buy properties at tax sales by ensuring that if they do make a purchase which results in a redemption, they will be made whole by recovery of all their costs and attorney's fees. In addition, because of the governmental necessity of obtaining sufficient tax funds to perform necessary functions, the public policy of Arizona should be to encourage, rather than discourage, tax sale purchases of property. Therefore, the statute must be construed in a manner so as to encourage people to make such purchases.

Hunt cites several New Jersey cases which have addressed the public policy concerning tax sales and tax sale foreclosures. In *Wiltsie v. Belenski,* 114 N.J. Eq. 1, 168 A. 63 (N.J.Ch.1933), the court held that attorney's fees should be awarded in tax sale foreclosure suits, despite the fact that the applicable statute did not expressly provide for attorney's fees. The court reasoned:

If complainants in these cases be not allowed a reasonable counsel fee, the buying at tax sales will be discouraged. Persons will not bid at tax sales if they believe that such transactions will, or may, result in their being considerably out of pocket. If purchase at tax sales is discouraged, municipalities will be thus deprived of the opportunity to collect their taxes, and such collection is obviously a public necessity.

168 A. at 63. *See also Lonsk v. Pennefather,* 168 N.J.Super. 178, 402 A.2d 259 (App.Div.1979); *Township of Long Beach v. Daniel B. Frazier Co.,* 10 N.J.Misc. 918, 161 A. 677 (N.J.Ch.1932). None of these cases have been followed, or even cited, by any other jurisdiction.

The Arizona Supreme Court addressed the question of recovery of attorney's fees and costs under § 73–834, Arizona Code 1939, the predecessor of A.R.S. § 42–454, in *Southwest Metals Co. v. Snedaker,* 59 Ariz. 374, 129 P.2d 314 (1942). At issue in that case was whether the trial court abused its discretion in refusing to set aside a judgment clearing title in favor of the plaintiff, rather than affording the defendant his right to redeem the property in accordance with the statute. The court noted, in dicta, that "[i]f redemption is made, plaintiff will receive *all* that he has expended ...," 59 Ariz. at 391, 129 P.2d at 321 (emphasis added), thus implying a plaintiff would receive reimbursement for *all* his costs in the event of a redemption. *See generally* 19 Arizona Bar Journal 6, Goodman, *Attorney's Fees in the Tax Lien Foreclosure Action: When Are They Awardable?,* p. 6 (1984).

Eliot argues that awardable costs are restricted to those set forth in A.R.S. §§ 12–332 and –333. Taxable costs authorized by § 12–332 are witness and officers fees, deposition costs, referees' compensation, cost of certified copies of papers or records, bond costs and costs incurred pursuant to court order or by agreement of the parties. Section 12–333 specifically disallows the cost of copying paper not required by law. Pursuant to these sections, the trial court denied Hunt reimbursement

for postage and non-certified copies of papers, but allowed the types of costs specified in § 12–332.

■ This court has stated that "[u]nless provided for by statute, expenditures made by parties in civil proceedings are not recoverable as costs." *Sweis v. Chatwin,* 120 Ariz. 249, 251, 585 P.2d 269, 271 (App. 1978); *Fowler v. Great American Ins. Co.,* 124 Ariz. 111, 114, 602 P.2d 492, 495 (App. 1979). Arizona Revised Statutes § 42–454 does not specify the types of costs which are allowed, and costs are not defined anywhere within Article 8 of Title 42. Arizona Revised Statutes § 12–332 specifically concerns costs in superior court, the court in which the proceedings of this case occurred. Different statutes dealing with the same subject matter, in this case the reimbursement of costs in superior court, should be construed together. *City of Scottsdale v. McDowell Mountain Irrigation and Drainage Dist.,* 107 Ariz. 117, 121, 483 P.2d 532, 536 (1971). We therefore conclude that costs under § 42–454 are limited by A.R.S. §§ 12–332 and –333.

■ We are not unmindful of the public purpose behind § 42–454, and the merits of awarding *all* costs rather than those delineated by statute. *E.g., Southwest Metals Co. v. Snedaker,* 59 Ariz. 374, 129 P.2d 314 (1942). The legislature has determined, however, what costs are recoverable. It is not the judiciary's place to expand the types of recoverable costs in the absence of legislative authority, even though a public policy may be served. *But see Wiltsie v. Belenski,* 114 N.J.Eq. 1, 168 A. 63. Hunt and other tax lien purchasers will be out of pocket some of their expenses when a property is redeemed pursuant to A.R.S. § 42–454. The same is true, however, with the prevailing party in any litigation for which costs are allowed, pursuant to § 12–332. Moreover, in the absence of a redemption by the property owner, tax lien purchasers such as Hunt can benefit greatly. The out-of-pocket loss if a property is redeemed would be relatively minimal compared to the potential gain if the property is not redeemed. We do not believe the inability to recover every conceivable out-of-pocket expense will necessarily discourage tax lien purchasers.

■ Lastly, where costs are awardable, the trial court is given wide latitude in determining the amount. *Fowler v. Great American Ins. Co.,* 124 Ariz. 111, 114, 602 P.2d 492, 495 (App.1979). The trial court's discretion will not be disturbed on appeal in the absence of an abuse of that discretion. *DeMontiney v. Desert Manor Convalescent Center,* 144 Ariz. 21, 29, 695 P.2d 270, 279 (App.), *approved in part, vacated in part on other grounds,* 144 Ariz. 6, 695 P.2d 255 (1985). There was no showing here of an abuse of discretion.

## AMOUNT OF ATTORNEY'S FEES

■ Hunt also argues that the trial court abused its discretion in reducing the amount of attorney's fees awarded. Hunt requested a total of $2,040.00, and the trial court awarded $400.00. Hunt urges the same public policy arguments set forth in the preceding section as requiring the trial court to award all its requested fees. It also argues that the fees were reasonable and necessary and that no attorney would agree to handle a redemption foreclosure lawsuit for a fee of only $400.00.

Besides opposing the award of any attorney's fees, the Eliots counter with allegations concerning specific fees claimed, questioning the necessity of such services and whether they were reasonable. In essence, the Eliots argue that much of the claimed fees were not reasonable, and the trial court properly limited the award to reasonable fees incurred, as required by § 42–454.

The trial court gave no indication of how it determined $400.00 to be a reasonable attorney's fees. It expressly stated, however, that it had considered the limited information before it concerning counsel's ability, training, education, experience, professional standing and skill, as well as the character of the work involved, the skill, time and attention given to the work, citing *Schwartz v. Schwerin,* 85 Ariz. 242, 336 P.2d 144 (1959). Our review of the record does not reveal a clear abuse; rather, there was substantial evidence to support the

Eliots' claims that much of the claimed fees were unnecessary or unreasonable. Although there was conflicting evidence offered by Hunt, the trial court was free to make its own findings of fact in determining a reasonable attorney's fee. The trial court may reduce the amount of requested fees and, absent a clear abuse of discretion, the award will not be disturbed on appeal. *Associated Indem. Corp. v. Warner*, 143 Ariz. 585, 589, 694 P.2d 1199, 1203 (App. 1983).

## CROSS–APPEAL

The Eliots argue on cross-appeal that attorney's fees should not have been awarded at all because Hunt's attorney, Jack Simon, was essentially representing himself. Simon is one of Hunt's two general partners. He is also the trustee for the other general partner, the Ina P. Hunt Trust. The terms of the trust require Simon, as trustee, to manage the trust assets for the benefit of certain primary beneficiaries until their deaths. Three primary beneficiaries are still living.

The Eliots contend that under the aggregate theory of partnership, a partnership is the aggregate of its members, rather than a separate entity. Since Hunt is composed of Simon, as one partner, and a trust in which Simon is the trustee with the power to ultimately control and own the entire trust corpus, the separate identities are all merged with that of Jack Simon.

Hunt, on the other hand, contends that Arizona has not clearly adopted the aggregate theory of partnership. Rather, the entity theory, whereby a partnership is considered a legal entity with a separate identity from that of its partners, is the more preferred and modern trend in many jurisdictions, and Hunt urges it should be adopted in Arizona, at least for purposes of this case. In the alternative, Hunt argues that Simon is not representing himself with respect to the Ina P. Hunt Trust since his interest is a future, rather than a present, interest.

The trial court concluded that there was an attorney-client relationship between Hunt and Simon, and on that basis awarded attorney's fees. We agree for the reasons set forth below.

It is undisputed in Arizona that one who acts on his own behalf, including an attorney, is not engaged in the practice of law. *Connor v. Cal-Az Properties, Inc.*, 137 Ariz. 53, 56, 668 P.2d 896, 899 (App.1983). He is therefore not entitled to attorney's fees. *Id. See generally* Annot., "Right of Party who is Attorney and Appears for Himself to Award of Attorney's Fees against Opposing Party as Element of Costs," 78 A.L.R.3d 119 (1977). The *Connor* court stated that "one who acts *only* for himself is not considered to be engaged in the practice of law." 137 Ariz. at 56, 668 P.2d at 899 (emphasis added). Thus, the question is whether Simon acted *only* for himself. In *Connor*, the three plaintiffs were attorneys who represented themselves in the lawsuit. In this case, however, the plaintiff is a partnership, as opposed to a natural person. Without reaching the aggregate/entity question of partnership status, we do not believe a partnership can represent itself because it is not a natural person.

As an attorney, Simon could certainly represent his own one-half partnership interest, in which case he would not be considered engaged in the practice of law. *Connor*, at 56, 668 P.2d at 899. He could also represent his own interest, in the partnership, even if he were not an attorney. *Bloch v. Bentfield*, 1 Ariz.App. 412, 417, 403 P.2d 559, 564 (1965). However, as a lay person, he could not represent the other one-half partnership interest or the partnership.

The Arizona Supreme Court has held that an attorney in fact, not licensed to practice law, could not represent anyone other than herself. *Mosher v. Hiner*, 62 Ariz. 110, 113–14, 154 P.2d 372, 374 (1944). In *Bloch v. Bentfield*, this court held that although a plaintiff who was not licensed to practice law could represent himself, he could not represent his co-plaintiffs. And, of course, it has long been held that a corporation must be represented by a licensed attorney—it cannot be represented by a lay employee or appear *in propria persona. Ramada Inns, Inc. v. Lane and Bird Advertising, Inc.*, 102 Ariz. 127, 128, 426 P.2d 395, 396 (1967); *Anamax Mining*

*Co. v. Arizona Dept. of Economic Security*, 147 Ariz. 482, 484, 711 P.2d 621, 623 (App. 1985). Lastly, a husband who is not licensed to practice law cannot represent his wife in court, whether her interest is community or separate. *Haberkorn v. Sears, Roebuck & Co.*, 5 Ariz.App. 397, 399, 427 P.2d 378, 380 (1967).

Although none of these cases address the specific question before this court, they are persuasive to our conclusion that a partner cannot represent a partnership, except in an attorney-client relationship. A partnership will necessarily have interests beyond that of just one partner. Thus, the partner who attempts to represent the partnership is not acting *only* for himself. *Cf. Connor*, 137 Ariz. 53, 668 P.2d 896. The Eliots argue that since Simon is the trustee of the Ina P. Hunt Trust, the only other partner in Hunt besides himself, he was in essence representing his sole interests. In support of this, they point out that Simon, as trustee, could ultimately distribute the trust assets to himself. A review of the will creating the trust, however, reveals that Simon, as trustee, is bound to manage the trust for the benefit of certain primary beneficiaries during their lifetimes. Upon their deaths, he has the option to distribute the assets to himself. The primary beneficiaries, however, are still living. As trustee, Simon has a legally imposed fiduciary duty to manage the trust assets for the benefit of the primary beneficiaries. *See* A.R.S. § 14–7301 *et seq.* Thus, Simon was acting on behalf of the primary beneficiaries' interests, as well as his own. He therefore was not acting *only* for himself. The necessary conclusion is that he acted in his capacity as an attorney, in an attorney-client relationship.

We do not ignore the basic partnership premise that every partner is an agent of the partnership, and that a partner has the ability to act for and bind a partnership. A.R.S. § 29–209(A). A spouse has a similar ability to act for and on behalf of the other spouse, and to bind the marital community. Yet, a spouse not licensed to practice law cannot represent his or her spouse in legal matters. *Haberkorn*, 5 Ariz.App. at 399, 427 P.2d at 380. Similarly, we hold a partner, except if in an attorney-client relationship, cannot represent his partners or the partnership in legal matters.

## ATTORNEY'S FEES ON APPEAL

The Eliots have requested their attorney's fees pursuant to A.R.S. §§ 12–349(A), –2106 and Rule 25, Arizona Rules of Civil Appellate Procedure. We do not find the appeal to be frivolous or without merit and therefore deny this request.

## SUMMARY

In conclusion, we hold that the trial court properly determined that "costs incurred" pursuant to A.R.S. § 42–454 are limited to those set forth in A.R.S. §§ 12–332 and –333. In addition, the trial court correctly determined that an attorney-client relationship existed between Simon and the partnership, therefore requiring a mandatory award of reasonable attorney's fees under A.R.S. § 42–454. Lastly, the trial court did not abuse its discretion in reducing the amount of attorney's fees requested.

Affirmed.

GRANT and FROEB, JJ., concur.