Justice LEE, opinion of the Court:
{ 1 This is an appeal from a juvenile court order adjudicating the children of appellant D.H. "abused" and "neglected" under Utah Code section 78A-6-105 (2008), and prohibiting any further contact between D.H. and his children. D.H.'s appeal is premised on a challenge to the juvenile court's denial of a request for additional time to allow D.H.'s expert to conduct a pre-trial investigation. While recognizing the potential value of such an investigation, the juvenile court denied that request on the ground that the governing statute required a final adjudication hearing in cases like this one within sixty days of the filing of a petition. See Uran CopE § TBA-6-809(2).
{2 We reverse and remand. Because the parties had jointly stipulated to an extension of the sixty-day period set forth by statute, D.H.'s request for additional time to conduct an investigation should not have been denied on the ground that the statutory deadline had passed. Instead the juvenile court should have exercised its discretion to decide whether further discovery was justified under the circumstances of the case. We reverse on that basis. And we remand to allow the juvenile court to determine the terms and conditions of additional time for pretrial investigation by D.H.'s expert and to hold a new final adjudication hearing in light of the results of that investigation.
I
T3 D.H. and KH. had been married for about ten years when they divorced in 2010. *369 They had three children, MH., Mw.H., and Dn.H. Under their divorce decree, K.H. (the mother) was awarded sole custody, with D.H. (the father) retaining rights to visitation, or statutory "parent-time."
T4 In or about April 2011, K.H. began to refuse to make the children available to D.H. for parent-time. She did so based on her claim that her son, M.H., then five years old, had told her that his father had let M.H. look at "naked magazines" and had threatened violence if M.H. told his mother about it. K.H. responded by reporting the incident to the Division of Child and Family Services (DCFS) and by requesting therapy through Valley Mental Health.
15 DCFS investigated K.H.'s complaint but ultimately dismissed it as insufficiently supported. In May 2011, however, M.H. began to see a therapist with Valley Mental Health. Later, in September 2011, MH. allegedly told the therapist that his father had made M.H. touch his father's penis, that his father then touched his penis, that his father had put his finger in M.H.'s anus, and that his father had made MH. lick his father's penis. MH. made the same charges in a recorded interview at the Tooele County Children's Justice Center.
1 6 In light of these allegations, the State filed a juvenile court petition under Utah Code section 78A-6-804, seeking an adjudication that D.H. had abused and neglected MH., Mw.H., and Dn.H., under Utah Code section 78A-6-105 (2008).[1] The petition was filed on November 14, 2011. Under Utah Code section T8A-6-809(2), the State's petition triggered a requirement of a hearing within "60 calendar days" of the "filing of the petition." [2]
T 7 At pretrial conference on November 17, 2011, the juvenile court entered an order suspending D.H.'s parent-time with M.H., restricting D.H. to supervised visits with his other children, and directing that the children remain in the custody of KH. during the pendency of the proceedings. At that same hearing, D.H. asserted a right to "have his own individual therapist ... talk to the children," and to have an expert conduct an "independent evaluation" in preparation for trial on the State's petition. The juvenile court agreed, indicating that DCFS could supervise the evaluation process using its "best judgment."
18 D.H. also requested an order that KH. be required to "cooperate with making the children available" to meet with D.H.'s expert. The court agreed, while cautioning that the children should not be subjected to an excessive number of meetings with the éxpert. And the court also ordered that the children be required to meet with an expert of D.H.'s choosing, although for some reason that requirement did not appear in the court's minute entry or in any written order.
T9 Despite the court's orders, KH. refused to cooperate with D.H.'s attempts to have his expert meet with the children. On two separate occasions, KH. declined to make the children available for scheduled appointments with D.H.'s expert. D.H. responded by filing a motion for an order to show cause.
T 10 The juvenile court heard argument on this motion at a pretrial conference on December 15, 2011. At that hearing K.H. conceded that she had failed to make her children available for appointments with D.H.'s expert. But she claimed that she had done so on advice of counsel-a new attorney who had not been present at the November 17 pretrial hearing, and who apparently had based his advice on the lack of a written order or minute entry reflecting a requirement that she make the children available for consultation with D.H.'s expert. The juvenile court then confirmed-and the parties apparently agreed-that such an order had in fact been issued orally by the judge at the November 17 hearing. Because the order had not been reflected in writing, however, the court declined to find KH. in contempt, *370 and instead proceeded to clarify her obligations going forward.
1 11 Specifically, the court ordered KH. to make MH. and Mw.H. available for:- one meeting with D.H.'s expert some time before January 5, 2012. When D.H. objected, insisting that a single visit would not be enough, the court responded by requiring that D.H.'s expert submit a letter by the next hearing (on January 5, 2012) setting forth the "protocol and procedure" for any additional visits that he requested and specifying the time needed for any such visits.
{12 D.H. then raised a concern regarding the impending sixty-day statutory deadline for a hearing on the State's petition-a deadline that would require a hearing on or before January 13, 2012. Given that expert discovery had been stalled by K.H. from the time of the filing of the petition on November 14 through the date of the pretrial hearing on December 15, and in light of the additional difficulty presented by the impending holiday season, D.H. requested an extension of the statutory deadline, emphasizing the need for additional time for his expert to meet with M.H.
The court acknowledged D.H.'s motion to "waive" his statutory right to a trial within sixty days to allow for additional time for D.H.'s expert to meet with M.H. prior to trial. The court then turned to counsel for K.H., counsel for the State, and counsel for the children (an attorney from the Guardian ad Litem's office) and asked whether they had any objection. All parties stipulated to waiver of the statutory deadline and to an extension of the trial date.
14 The initial court-ordered meeting of D.H.'s expert with M.H. took place on December 28, 2011. According to the expert, he had a difficult time during this visit getting direct answers to his questions from MH. because his older brother Mw.H. was present and dominated the conversation "even when MH. was asked to respond." The expert also indicated a concern, based on M.H.'s responses and body language, that "it seemed clear he was being led [by Mw.H.] to say things." In light of these concerns, the expert indicated that he needed additional time with M.H. to prepare to testify at trial, while also representing that his holiday schedule had not allowed time to prepare a formal letter to the court as requested.
1 15 The parties next appeared in the juvenile court for another pretrial hearing on January 5, 2012. At that hearing D.H. formally requested additional time for expert discovery and trial preparation. The court denied the request. Despite the parties' pri- or stipulation to waive the sixty-day statutory deadline for a hearing, the court denied the request for additional time on the basis of the impending deadline. It emphasized that "the statute says we have to try these cases within 60 days," and set a trial date on the basis of the "legislative decision" to establish a "deadline" advancing the interest of expedited resolution. In so doing, the court acknowledged the value of further discovery, but concluded that the legislature had indicated that it did not "want these issues to linger," but "wanted] [the court] to make a decision based on the evidence that's there." The court entered a written order to the same effect, confirming the judge's view that although all parties "might benefit from more time to prepare for trial," the "Legislature has had to take into account and balance the interests of all parties," and has "set a 60 day time limit on juvenile court adjudications."
16 At that point D.H. raised a constitutional objection to the sixty-day deadline pre-seribed by statute, challenging the provision both generally and as applied here. The court responded by indicating that he would allow the parties to present further argument on the question whether the sixty-day deadline was constitutional as a matter of due process. -It also set the case for a two-day bench trial on February 6 and 7, 2012.
117 The court denied D.H.'s constitutional challenge on February 2, 2012, concluding that D.H. had been afforded sufficient due process and that the children's interest "in seeing that juvenile court proceedings do not linger" outweighed D.H.'s interest in preparing his defense. The parties then proceeded to the bench trial on February 6 and 7, 2012, where D.H.'s counsel in opening renewed his assertion that his client's "due process rights *371 hald] been prejudiced because of his almost no time to prepare adequately for trial,"
€18 At trial D.H.'s expert testified concerning his one meeting with MH. and Mw.H. He opined that although the court had not allowed him enough time to properly evaluate M.H. and Mw.H., M.H.'s behavior and statements during their interaction indicated that K.H. had asked MH. to keep some sort of secret from him. What that secret was he did not know, but the expert testified it was important to find out. He also noted that during his interaction with MH., Mw.H. attempted to dominate the conversation and answer questions on M.H.'s behalf. The expert declined to give an opinion as to the abuse allegations, however, stating only that he would need more time for such a determination.
119 The State, the Guardian ad Litem, and counsel for KH. objected to the expert's qualifications, in part because he had spent so little time with the children. The court overruled the objections, concluding that the objections affected only the weight to be given to the expert's testimony. On cross-examination, the State questioned the expert at length, challenging his ability to reach any reliable conclusions after only a single two-hour visit with the children, and highlighting the fact that he had never visited with M.H. alone.
20 At the close of the evidence, the juvenile court determined that D.H. had sexually abused and neglected M.H. under Utah Code sections 78A-6-105(1), (19), (28), (25)(a)G), and (85), and neglected Mw.H. and Dn.H. under section 78A-6-105(25)(a)(iv). In so doing, the court rejected D.H.'s expert's opinions as "sweeping conclusions [based on] limited evidence." The court ordered that custody and guardianship of all three children be with K.H., terminated all reunification services for D.H., and prohibited D.H. from having any contact with M.H. and Mw. H.[3]
1 21 D.H. filed this appeal, which was certified to us by the court of appeals We review the matter on standards of review articulated in the body of the opinion below.
II
122 D.H.'s appeal challenges the juvenile court's decision on due , process grounds. Echoing part of the constitutional challenge he raised in the juvenile court, D.H. asserts that the sixty-day deadline prescribed by statute was constitutionally suspect as applied to the cireumstances of this case. Citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), D.H. asserts that constitutional principles of due process should have required a further extension of the statutory deadline for the hearing in this case to allow his expert an opportunity for further discovery and trial preparation. He argues, specifically, that his parental interests are paramount, that the government's interest in opposing an extension was minimal, and that there was a significant "risk of an erroneous deprivation" of his rights and a significant "value" in a further extension. Id. at 834-85, 96 S.Ct. 898 (identifying the factors to be balanced in a procedural due process analysis). And because the district court denied his request for a further extension, D.H. asserts that his due process rights were denied by the juvenile court's decision.
123 We reverse, but without reaching the constitutional question presented by D.H. First, because all parties stipulated to extension of the sixty-day deadline prescribed by statute, we conclude that the statutory deadline was off the table, and that the question presented was one to be decided by the juvenile court judge as a matter of discretion. Second, we conclude that for that reason the constitutionality of the sixty-day deadline was not properly presented to the juvenile court and should not have been addressed. And finally, we hold that D.H.'s request for more time for expert discovery and trial preparation should have been granted based on a balance of the relevant interests of all parties.
*372 A
1 24 The threshold decision of the juvenile court was the determination (on December 15, 2011) to accept the parties' stipulation to waive the sixty-day deadline prescribed by statute. All parties expressly agreed to that extension in the juvenile court. And no one has challenged it on appeal.
125 In light of the stipulated, unchallenged waiver of the statutory timeframe, the juvenile court should have deemed the sixty-day deadline to be off the table. And the judge should thereafter have proceeded to decide pretrial scheduling questions as matters committed to his sound discretion. See Gardner v. Bd. of Cnty. Comm'rs, 2008 UT 6, 51, 178 P.3d 898 (trial courts have broad discretion in matters of discovery); DeBry v. Cascade Enters., 879 P.2d 1353, 1361 (Utah 1994) (pretrial scheduling and case management are matters for the trial court's discretion).
126 The juvenile court judge erred in treating the statutory deadline as somehow still controlling. In denying D.H.'s motion for additional time for expert discovery and trial preparation, the judge reverted back to the statutory deadline-asserting that "the statute says we have to try these cases within 60 days," and setting a trial date on the basis of the "legislative decision" to establish a "deadline" for trials in cases such as this one. That was error, as the "legislative decision" had been waived by joint stipulation of all parties. And the error was highlighted, moreover, in the judge's written order, which coupled a concession that the parties "might benefit from more time to prepare for trial" with the reminder that the "Legislature has had to take into account and balance the interests of all parties" and has "set a 60 day time limit on juvenile court adjudications."
127 This was error. Because the parties stipulated to waive the statutory deadline, the legislative directive of a final resolution at the end of sixty days was no longer in effect. And with the statutory timeframe off the table, the juvenile court should have exercised its discretion to decide whether to allow D.H. additional time for expert discovery. No such discretion was exercised. To the contrary, the court acknowledged the possible value of granting further time for trial preparation, but deemed himself bound by a statutory deadline that had previously been waived by joint stipulation of all parties.[4]
128 We reverse on that basis. Because the parties had jointly stipulated to waive the statutory deadline, the court should have proceeded to exercise its discretion. Its failure to do so was a threshold, reversible error.
29 In so concluding, we respectfully disagree with the contrary views advanced by Justice Nehring in his concurrence, which concludes that the statutory deadline could not be waived because "the parties and the court" had not "strictly compl{ied]" with our Rules of Juvenile Procedure. Infra T1 41-58.
130 The concerns raised in the concurrence are not properly before us, as no party has questioned the validity of the stipulated waiver of the statutory deadline-not on the grounds articulated in the concurrence or on any other basis. The parties' failure to raise this issue is reason alone not to address it. A matter unpreserved is a matter not properly presented, and our decision can be sustained on that basis alone.
*373 131 Rule 54 of the juvenile rules is not properly implicated. The rule was certainly cited in the juvenile court and on appeal, see infra 14 48 & 55, but not to raise the point pressed by the concurrence. Thus, at no point in these proceedings has the Guardian ad Litem or any other counsel or party ever challenged the viability of the stipulated waiver of the statutory deadline on the basis of a lack of findings under rule 54. And even if they had, that rule would hardly establish a basis for reversal given that (a) there was no error under rule 54(c) because the rule includes an escape clause ("unavoidable circumstances," UTAH R. JUV. P. 54(c)) that could easily encompass a joint stipulation of all parties in a case where the accused father has no access to the children and the mother has inexcusably interfered with the father's expert's trial preparation; (b) there was no error under rule 54(d) because the parties' joint stipulation could easily qualify as the practical equivalent of a "written finding by the court," Urax R. Juv. P. 54(d)[5]; and (c) in any event, any arguable error was harmless in light of the joint stipulation of all parties through their counsel.[6]
1 32 Granted, the governing statute speaks in mandatory terms. See infra 145 & n. 16 (noting that the term "shall" is "presumed mandatory"). But a broad range of constitutional and statutory rights and responsibilities are likewise framed in such terms. And we roundly treat them as subject to knowing and voluntary waiver. The constitutional right to a speedy trial is a prime example. Under the Sixth Amendment "the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI (emphasis added). That right is mandatory, but nonetheless subject to waiver,[7] as are most all rights in our legal system.[8] Thus, absent some clear statement in a statute, or some established caselaw deeming a deadline jurisdictional,[9] the settled presumption is that statutory deadlines are subject to waiver, We see no basis on the face of this statute to rebut that presumption, and accordingly deem it subject to waiver,[10]
*374 133 We accordingly reverse the juvenile court's threshold denial of D.H.'s request for additional expert discovery time on the basis of the statutory deadline under Utah Code section 78A-6-309(2). Because that deadline was waived by all parties and was accordingly off the table, the court should instead have exercised its discretion to determine the appropriateness of any further extension of the statutory deadline and to proceed to set a timely. trial date.
B
34 The juvenile court's evaluation of the due process question was also improper. That question was not properly addressed and ruled upon below, and is thus not properly before us on appeal. Instead of evaluating the question whether D.H.'s due process rights were violated in the cireumstances of this case, the juvenile court assessed a hypothetical question-"whether the Legislature provided the father with sufficient due process under the sixty day requirement." Yet that was not the issue before the court, as the "60-day requirement" had been waived by the parties' stipulation. So the juvenile court was not in a proper position to "find[ ] that Utah Code § 78A-6-819 provides sufficient due process," as it did in its order.
4 35 We accordingly vacate that portion of the juvenile court's order, as it was improperly advisory. And we likewise decline to reach it here, as a matter not properly presented below is not an appropriate matter for our attention on appeal.
C
T 36 The remaining question concerns the basis and seope of our remand to the juvenile court. Above we found error in the decision treating the sixty-day statutory deadline as foreclosing any further expert discovery and trial preparation. Here we proceed to the subsequent question whether the court's decision might nonetheless be sustained on an alternative ground-that a proper exercise of discretion would have led the court to the same decision.
137 In our view the answer is no. First, there was substantial upside in a further extension allowing D.H.'s expert additional time for discovery and trial preparation. D.H. had a lot riding on the proceeding-a determination that he sexually abused his child, a decision threatening his parent-time and, potentially, his fundamental right to have a say in the upbringing of his children. See Urax Copm § 78A-6-117(2) And his expert was substantially unprepared to present effective testimony on his behalf, as counsel for the State emphasized and the juvenile court ultimately concluded.
11 38 Second, D.H.'s expert's lack of preparation was a direct result of K.H.'s indefensible (borderline contemptuous) interference with his attempts to pursue early pretrial discovery in initial scheduled visits. Absent such interference, there is every reason to believe that D.H.'s expert would have been better prepared to testify at trial. And that interference is perhaps the reason that K.H.-and all parties-readily agreed to D.H.'s initial request for waiver of the statutory deadline. It is also a significant basis for a further extension, as the one visit that was allowed did not appear to have been enough given Mw.H.'s apparent interference with the expert's questioning of M.H.
139 Third, and for many of the same reasons, there were sufficient grounds to believe that further time for expert discovery and trial preparation might have made a difference to the outcome of the trial. It is worth reiterating that D.H.'s expert acknowledged the deficiency of his interactions with MH. in the testimony he provided at trial, that counsel for the State jumped on that point in challenging his testimony on cross-examination and closing, and that the court itself seized on the problem in announcing its decision. The point is not to express confi-denee that further expert discovery will produce sufficient evidence to exonerate D.H. of the charges against him. We do not and cannot know that at this stage. But we can *375 say that there was sufficient reason to justify further discovery and trial preparation at the time that D.H. requested it on January 5, 2012. And we reverse and remand on that basis.
{40 Our remand leaves for the juvenile court the determination of the precise terms and conditions of further discovery and trial preparation, and of the time for a new trial on the merits, subject of course to the need to protect the interests of the children and to proceed to trial as expeditiously as possible. But we do direct that some further time for expert discovery and trial preparation is nee-essary, with a new trial to follow.
Associate Chief Justice NEHRING filed a coneurring opinion.

. Section 78A-6-105 has been amended and renumbered three times since the 2008 version, in 2011, 2012, and 2014. All citations to section 78A-6-105 in this opinion refer to the 2008 version of the statute.

. Technically, the statute requires a final adjudication hearing within sixty days of the later of the date of a "shelter hearing" or "the filing of the petition." Uran Cope § 78A-6-309(2).

. The court allowed D.H. to have professionally supervised visits with Dn.H., but only up to two hours twice a month, and at D.H.'s expense.

. The decision to reverse on this basis stems from a straightforward assessment of the procedural history of the case-of the fact that the parties and the court had unquestionably extended beyond the sixty-day deadline prescribed by statute. That procedural fact, in turn, dictates the conclusion that the juvenile court judge was mistaken in basing a refusal to allow further pretrial preparation on the very deadline that had already been overridden. And the procedural history of a case is not a legal "theory"" that must be argued by the parties in order to be "preserved." See infra 155 (suggesting that waiver of the statutory deadline is a matter that was "unpre-served"). It is simply an element of the context in which we review the decisions that come before us on appeal.
Thus, if a lower-court decision is made on the basis of a mistaken procedural premise rendering its analysis advisory, an appellate court cannot be required to ignore the procedural history of the case and to proceed on the basis of the same mistaken understanding. Instead, we must review the lower court decision in accordance with an accurate view of the procedural history of the case. That is the basis of the approach we take here.

. Office of the Guardian Ad Litem ex rel. S.C. v. Anderson, 1999 UT App 251, 987 P.2d 611, is distinguishable on that basis. In S.C., the Guardian ad Litem attorney expressly objected to the requested extension and asserted that ""it would not be in the best interests of the children" to go beyond the statutory deadline. Id. I 17 (emphasis omitted). The S.C. court's requirement of explicit findings makes sense in that context. But that requirement does not extend to a case like this one, where counsel for the children made a stipulation that served as an adequate substitute for findings.

. To assess whether any arguable error by the juvenile court under rule 54 would justify reversal {and thus reinstatement of the statutory deadline), we would determine whether an express consideration of the standards of rule 54 would be satisfied if the court had considered them explicitly. We have little doubt on that score. The express stipulation to waiver of the statutory deadline by the attorney from the Guardian ad Litem's office (counsel for the children) easily establishes that the continuance would not "adversely affect the interest of the child[ren]" as required by rule 54(c). And in any event, that point is hammered home by the undisputed fact that D.H.'s parent-time had been suspended and K.H. had sole custody of the children throughout the proceedings below. Moreover, the unusual circumstances of this case emphasize the "unavoidable circumstances" justifying continuance of the hearing beyond the "timeline[ ] established by statute," as also contemplated under rule 54(c). And finally, for all these reasons any technical deficiency in a failure to memorialize "written finding{s]" under rule 54(d) is likewise harmless. The record establishes ample grounds for a determination of the need for a continuance in this "sexual abuse case[] involving child victims." Urag R. Juv. P. 54(d). In light of these points, we would not find reversible (non-harmless) error even if the rule 54 issue had been preserved, and even if a technical violation of the rule had been established.

. Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 LEd.2d 101 (1972) (recognizing that the Sixth Amendment right to a speedy trial is subject to waiver, and indicating that "waiver may be given effect under standard waiver doctrine" where "delay is attributable to the defendant").

. See United States v. Mezzanatto, 513 U.S. 196, 203, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (noting and relying on the "background presumption that legal rights generally ... are subject to waiver by voluntary agreement of the parties").

. See, eg., Bowles v. Russell, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (appellant's failure to file his notice of appeal within time limitations deprived the court of appeals of jurisdiction and could not be excused by forfeiture or waiver).

. In so holding, we do not intend to imply that a parent alone would be in a position to waive *374 the deadlines prescribed by statute. Because the deadlines at issue affect not just parents but also children, a waiver in these circumstances would be effective only if also agreed to by the guardian ad litem representing, the interests of the children.